Argued and submitted January 20, reversed and remanded for a new trial
April 26, 1989

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN Q. MUNRO,
*Appellant.*

## (C87-10-36073; CA A48391)

772 P2d 1353

Jeffrey A. Long, Tualatin, argued the cause and filed the brief for appellant.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Defendant appeals his conviction for theft on the ground that the trial court should have suppressed his confession. We agree and reverse.

Detective McGuire, knowing that there were several outstanding warrants for defendant's arrest, obtained a search warrant authorizing him to search for defendant at 54 N.W. 13th Avenue, Apt. 4, in Gresham. The record does not show that McGuire or any other officer at any time developed any reason to believe that defendant would be present at that location other than the information in the affidavit for the search warrant. The record does not show that the apartment was defendant's. The evening of the day that he obtained it, McGuire and several other officers executed the warrant. At approximately 9:15 p.m., they banged on the door, listened for sounds from within, kicked in the door and arrested defendant in a hallway between a bedroom and a bathroom. They took defendant to the police station in downtown Portland, advised him of his rights at 10:58 p.m. and interrogated him for approximately three hours. During the interrogation, defendant confessed to stealing $1,211 from the Washington Park Zoo.

Before trial, defendant moved to suppress the confession, arguing that the search warrant was invalid, making the confession the fruit of an illegal search. The trial court denied the motion. It appears that the court held that the warrant was invalid and then decided that the illegality did not require suppression.[1] The court found defendant guilty in a trial to the court on stipulated facts.

■ Defendant argues that a search warrant was required but that the one obtained was invalid, that the search was a violation of his rights under Article I, section 9, and the Fourth Amendment and that the post-arrest confession is a product of the illegality and must be suppressed. Under ORS

---

[1] The transcript reads: "I find that the search warrant is effective but I think the effects of the warrants were there as the *State v. Packard* applies and that theory applies and so I'm denying the motion on that basis." It appears that the reporter misheard the judge, who probably said that the search warrant was *defective* and that *State v. Hacker*, 51 Or App 743, 627 P2d 11 (1981), applies. *Hacker* describes three exceptions to the "fruit of the poisonous tree" doctrine.

133.235(5),[2] police may enter premises to make an arrest only if they have probable cause to believe that the person to be arrested is present. Only if the police had probable cause to search but had no valid search warrant do we reach the constitutional question of whether a search warrant was required. We first address the issue of probable cause.

■ ■ The legislature has codified the test for probable cause when issuing search warrants based on hearsay statements from unnamed informants in ORS 133.545(4).[3] The same test is appropriate to determine whether the officers had probable cause to search for defendant on the basis of hearsay information. ORS 133.545(4) requires that affidavits in support of search warrants set forth "(1) the basis of the informant's knowledge, and (2) facts showing the informant's 'veracity,' *i.e.*, that he is credible or that his information is reliable." *State v. Villagran*, 294 Or 404, 409 n 3, 657 P2d 1223 (1983). Defendant only challenges the informant's "basis of knowledge." The affidavit states:

> "I have been told by a confidential informant in the past three hours that JOHN QUINTON [sic] MUNRO is known by name and appearance to the informant and is presently hiding from police at 54 NW 13th Avenue, Apartment #4, City of Gresham, County of Multnomah, State of Oregon and that JOHN QUINTON [sic] MUNRO is planning to flee this jurisdiction tonight."

The state argues that the phrase "by appearance" implies that the informant saw and recognized defendant at that address and that otherwise such a phrase would be superfluous in the affidavit. We disagree. The phrase merely establishes that the informant recognizes defendant, not the basis for his knowledge that defendant had been at a particular location at a

---

[2] ORS 133.235(5) provides:

"In order to make an arrest, a peace officer may enter premises in which the officer has probable cause to believe the person to be arrested to be present."

[3] ORS 133.545(4) provides:

"The application shall consist of a proposed warrant in conformance with ORS 133.565, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

particular time. There is insufficient other information in the affidavit to provide the required probable cause and, because the officers provided no other basis for probable cause, the search was illegal.

The next issue is whether the illegality of the search requires suppression of defendant's subsequent confession. There is no express statutory result provided for a violation of ORS 133.235(5). The requirement of probable cause to enter private premises, however, is based on the constitutional right to be free from unreasonable searches and seizures. Or Const, Art I, § 9; US Const, Amend IV; *State v. Jordan,* 288 Or 391, 402, 605 P2d 646 (1980);[4] *see also State v. Kosta,* 304 Or 549, 748 P2d 72 (1987).

██ ██ Whether a violation requires supression of evidence derived from the illegal search depends on whether the search violated a protected interest of defendant. We first discuss the issue under the Oregon Constitution. *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983). In *State v. Tanner,* 304 Or 312, 320-21, 745 P2d 757 (1987), the Supreme Court described who could assert a privacy interest protectible from governmental interference during a search of premises. Invited guests who are in areas of a home that an invitation would reasonably cover, such as dinner guests in a dining room, are protected. 304 Or at 321. In this case, defendant had spent the night in the residence and was found in a hallway between a bedroom and bathroom. The state did not show that defendant's "invitation" and zone of privacy did not include the area in which he was discovered. The search violated his Article I, section 9, privacy interest.

██ ORS 133.683(1) requires suppression of evidence discovered as a result of a search or seizure "carried out in a manner that things seized in the course of the search would be

---

[4] In *Jordan,* the Supreme held that, under the Fourth Amendment, a search warrant is not needed in addition to an arrest warrant to search private premises as long as the officers have reason to believe that the object of the arrest warrant is on the premises. 288 Or at 402. That holding may be in doubt after *Steagald v. United States,* 451 US 204, 101 S Ct 1642, 68 L Ed 2d 38 (1981), where the Supreme Court held that, under the Fourth Amendment, a search warrant is required to search a private residence when the police have an arrest warrant for a person on the premises, but the residence is not that of the person for whom they have the warrant. 451 US at 212.

subject to suppression."[5] ORS 133.683 is Oregon's codification of the "fruit of the poisonous tree" doctrine. To apply it to the suppression of defendant's confession, the confession must have been "discovered" as a result of and after a search that would have required suppression of anything seized in the course of that search.

■　　　　Clearly, any physical evidence seized during the illegal search must be suppressed. We have held that testimonial evidence that is derived from illegal police conduct is subject to suppression under the same standards as is physical evidence derived from illegal police conduct. *State v. Staunton,* 79 Or App 332, 338, 718 P2d 1379 (1986). In reaching that conclusion, Oregon courts have relied on the federal exclusionary rule announced in *Wong Sun v. United States,* 371 US 471, 486, 83 S Ct 407, 9 L Ed 2d 441 (1963), which excludes evidence procured by the "exploitation" of the primary illegality, the illegal search. *See State v. Jones,* 248 Or 428, 423, 435 P2d 317 (1967). In *Wong Sun* the Court found that the policies underlying the exclusionary rule did not invite any logical distinction between physical and verbal evidence, including post-arrest confessions. 371 US at 486.

■ ■　　　The Oregon Supreme Court recently distinguished Oregon constitutional search and seizure analysis from federal analysis by pointing out that the Fourth Amendment protections are based on a theory of deterrence, while Article I, section 9, protects a personal right to be free from unreasonable search and seizure. *State v. Tanner, supra,* 304 Or at 315.

"The unlawfulness of which defendant complains was a search of the Best residence. *If the police violated any right of defendant's, it was a right against the search that uncovered the effects, not some right in the effects themselves.* An unlawful search that uncovers effects such as stolen goods or

---

[5] ORS 133.683 provides:

"If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

contraband, which also may not legally be possessed, will nevertheless result in suppression of those effects because the unlawfulness involves an infringement of rights apart from possessory interests (or the lack thereof) in the stolen goods or contraband seized as a consequence of the unlawful search." 304 Or at 316. (Emphasis supplied.)

We hold that, under Article I, section 9, an unlawful search that would require the suppression of physical evidence involves an infringement of personal rights that would also result in the suppression of testimonial evidence derived as a result of that search. In this case, the illegal search would have required the suppression of any physical evidence seized. Defendant would not have confessed had he not been taken into custody as a result of the illegal search. The confession is the "fruit of the poisonous tree," and the exclusionary rule codified in ORS 133.683 applies. The state does not contend, and we do not find, that the taint of the illegality was avoided by reason of any exception to the exclusionary rule.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

Defendant was arrested pursuant to two arrest warrants and a search warrant. Therefore, in his motion to suppress, he had the burden of proving either that the warrants or the manner in which they were executed was improper. *State v. Elkins,* 245 Or 279, 292, 422 P2d 250 (1966). Although he met neither burden, the majority concludes that his confession must be suppressed as the product of an illegal search. The majority's allocation of the burden of proof in this case is wrong, and I dissent.

First, as the majority points out, when a search warrant is based on hearsay statements from an unnamed informant, the officer's affidavit must set forth the basis of the informant's knowledge in order to establish probable cause. However,

"each affidavit must be examined in a common sense, nontechnical manner, looking at the facts recited and the reasonable inferences that can be drawn from those facts. (Citations omitted.) Further, where the existence of probable cause is marginal, the decision should be tempered by the preference to be accorded warrants." *State v. Eaton,* 60 Or App 176, 181, 653 P2d 250 (1982), *rev den* 294 Or 460 (1983).

In this case, the supporting affidavit stated:

"I have been told by a confidential informant in the past three hours that JOHN QUINTON [sic] MUNRO is known by name and appearance to the informant and is presently hiding from police at 54 N.W. 13th Avenue, Apartment fi4, City of Gresham * * * and that JOHN QUINTON [sic] MUNRO is planning to flee this jurisdiction tonight."

Allowing reasonable inferences, the clear sense of that language is that the informant saw and recognized defendant at the noted address and believed that he would remain there until evening. Indeed, the essence of the informant's statement was, "I know defendant by sight and he is hiding at 514 N.W. 13th Avenue." In distinguishing the meaning of such language from the statement, "I saw defendant at 514 N.W. 13th Avenue," the majority reads the affidavit technically, thus defeating the preference to be accorded warrants. I would hold that, because the search warrant was valid, there is no basis upon which to suppress defendant's confession.

Second, the majority ignores the existence of the two valid warrants for defendant's arrest. Those warrants gave the police authority to arrest defendant in any public place or at his own residence without a search warrant. *Steagald v. United States,* 451 US 204, 221, 101 S Ct 1642, 68 L Ed 2d 38 (1981). Moreover, because the police acted pursuant to a warrant, defendant bore the burden of producing evidence that his arrest was illegal. *State v. Elkins, supra,* 245 Or at 292; *see also* 4 LaFave, *Search and Seizure* 218, § 11.2(b) (2d ed 1987); OEC 307. In this case, nothing in the record establishes that the apartment at which defendant was arrested was other than his own residence or that there was any other defect in the execution of the arrest warrants. Thus, even if the *search* warrant was technically defective, defendant's arrest was still valid, and the trial court properly denied his motion to suppress.

In short, the majority has ignored the preference to be accorded searches and arrests made pursuant to warrants. Given defendant's lack of proof, suppressing the evidence gained after his arrest is more likely to deter police from bothering with warrants than it is to deter them from improper conduct. *See United States v. Ventresca,* 380 US 102, 108, 85 S Ct 741, 13 L Ed 2d 684 (1965). The trial court should be affirmed.