Argued and submitted August 27, 1999, affirmed January 12, petition for review allowed June 27, 2000 (330 Or 375)

STATE OF OREGON,
*Appellant,*

*v.*

VIRGINIA L. JONES,
wtn Virginia L. Roberts,
*Respondent.*

(97CR0663FE; CA A100934)

995 P2d 571

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Jesse Wm. Barton, Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

Linder, J., dissenting.

**BREWER, J.**

Defendant was charged with hindering prosecution. ORS 162.325. The state appeals from an order suppressing evidence that defendant's son, who was the subject of an arrest warrant, was found inside their common residence after the police entered the dwelling despite defendant's objection. The issue on appeal is whether the police, in attempting to execute an arrest warrant at a dwelling shared by the arrestee and another person, must have probable cause to believe that the arrestee is within the residence before entering, over the coresident's objection, without a search warrant or some other legally recognized authority. We review for errors of law, ORS 138.220, and affirm.

The facts are undisputed. For two to three weeks before February 20, 1997, Officer Kolberstein received anonymous complaints of drug trafficking by defendant's son, Getzelman, from the residence he shared with defendant. On February 20, Kolberstein and another police officer approached the residence in order to arrest Getzelman pursuant to a valid arrest warrant. Defendant answered the door when the officers arrived. Defendant admitted that Getzelman lived there but said that he was not at home and refused to permit the officers to enter the residence. Although they had no warrant to search the premises, the officers entered the dwelling over defendant's objection and found Getzelman in one of the bedrooms. Getzelman surrendered and defendant was charged with hindering his prosecution.

Defendant moved to suppress evidence that the officers found Getzelman inside the residence. She argued that Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution required the officers to have probable cause to believe Getzelman was inside the residence before they made a non-consensual entry in order to execute the arrest warrant. The trial court agreed with defendant that probable cause was required in the absence of any other legal authority for entry and further found that the officers merely had a reasonable belief that Getzelman was inside the house. The court granted defendant's motion, and this appeal followed.

The state concedes that the officers lacked probable cause to believe that Getzelman was inside the residence when they entered it to search for him.[1] In its sole assignment of error, the state argues that neither section 9 nor the Fourth Amendment requires probable cause and that reasonable suspicion that Getzelman was present justified the police entry.

■      We address the state's Oregon constitutional argument first. *State v. Rangel*, 328 Or 294, 298, 977 P2d 379 (1999); *State v. Maddux*, 144 Or App 34, 38, 925 P2d 124 (1996). Section 9 protects a personal right to be free from unreasonable searches and seizures. *See State v. Wacker*, 317 Or 419, 425 n 11, 856 P2d 1029 (1993) (a historical purpose of section 9 is to safeguard personal privacy rights); *see also State v. Munro*, 96 Or App 238, 243, 772 P2d 1353 (1989). In general, we presume that a warrantless entry and search of a private dwelling is unreasonable. *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). We emphasize that the issue before us is not whether the police violated Getzelman's rights but is, instead, whether, in the absence of any other legal authority, the entry was forbidden over the objection of defendant, for whom there was no arrest warrant.

The parties base their arguments on a series of search and seizure cases involving the propriety of warrantless searches under both the state and federal constitutions. The first of those cases, and the one that is most similar factually to the instant case, is *State v. Jordan*, 288 Or 391, 605 P2d 646, *cert den sub nom Jordan v. Oregon*, 449 US 846 (1980). In *Jordan*, as in this case, the police had a valid arrest warrant. The defendant was charged with hindering prosecution after she gave the police a false name and refused to let them search her house for the arrestee, who also lived there.[2] *Id.* at 393-94. Following a lengthy Fourth Amendment

---

[1] Probable cause means that "the facts upon which the warrant is premised must lead a reasonable person to believe that seizable things will *probably* be found in the location to be searched." *State v. Anspach*, 298 Or 375, 380-81, 692 P2d 602 (1984) (emphasis added). The courts determine whether a belief is reasonable by reference to the "totality of the circumstances * * * at the time and place" in question. *State v. Belt*, 325 Or 6, 10-11, 932 P2d 1177 (1997).

[2] The state contends that "[t]he court in *Jordan* did not consider whether [the arrestee] resided in the residence." That assertion is inaccurate. The court

analysis, the court concluded that under either the Fourth Amendment *or* section 9 "constitutional rights will be protected *as long as* any arrest on private premises is supported by the judicial authorization of an arrest warrant *and the police officer's probable cause* to believe that the arrestee is within the premises." *Id.* at 401-02 (emphasis added). The court concluded that no search warrant was required in order to authorize police entry under such circumstances. *Id.* at 402.

Shortly after *Jordan* was decided, the United States Supreme Court held that the Fourth Amendment requires only that an officer, under the authority of an arrest warrant, have a *reasonable belief* that an arrestee is inside his or her dwelling before making a nonconsensual entry. *Payton v. New York*, 445 US 573, 603, 100 S Ct 1371, 63 L Ed 2d 639 (1980) ("for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within"). The court's statement in *Payton* is technically *dictum,* because the police in *Payton* did not have an arrest warrant. Nevertheless, the Court later cited *Payton* as controlling authority in a case in which the police *did* have an arrest warrant. *Steagald v. United States*, 451 US 204, 214 n 7, 101 S Ct 1642, 68 L Ed 2d 38 (1981). The state argues that *Payton* and *Steagald* portend a relaxation of the probable cause requirement under section 9. We disagree.

■ *Jordan* relied primarily on Fourth Amendment decisions for its constitutional analysis. More recently, however, the Oregon courts have eschewed the practice of primary reliance on federal authority to interpret section 9. *State v. Davis*, 313 Or 246, 255, 834 P2d 1008 (1992) (*Jordan*'s "Oregon constitutional analysis discussed cases interpreting the Fourth Amendment rather more than has been our recent practice.") (citation omitted). In *Davis*, the police entered the defendant's mother's residence without a search warrant but held a valid warrant for the defendant's arrest and had probable cause to believe he was inside when they

expressly noted that defendant and the arrestee resided in the house in which the challenged entry occurred. *Id.* at 393.

entered the residence. Although *Payton* and *Steagald* were decided before *Davis,* the Oregon Supreme Court nonetheless followed its holding in *Jordan,* concluding that:

> "The arrest—the seizure of defendant's person—was made pursuant to a valid arrest warrant for defendant *and with probable cause to believe that defendant was on the premises.* The arrest of defendant did not, therefore, violate Article I, section 9, of the Oregon Constitution." 313 Or at 255-56 (emphasis added).

Contrary to the view of the dissent and the state, we understand *Davis* to confirm that, in the absence of a search warrant or other legal authority, probable cause to believe that the subject of an arrest warrant is within is not merely sufficient but is also *necessary,* to authorize police entry into a dwelling in which another person is a resident. Because *Davis* followed the *"Jordan* holding," *id.* at 255, it is important to understand that holding in its proper context.

It is true that in *Jordan,* the Supreme Court concluded that police officers had probable cause to believe that the arrestee was inside the dwelling that was searched. *Jordan,* 288 Or at 402-03. Therefore, it was not necessary for the court to decide whether a lesser degree of belief or suspicion would suffice in order to authorize entry. However, the court left little doubt that probable cause was necessary to the result of that case. As noted, the court stated that constitutional rights will be protected *as long as* an arrest on private premises is supported by a valid arrest warrant and "probable cause to believe that the arrestee is within the premises." *Id.* at 401-02.

Although the court's statement was technically *dictum,* it does not follow that it is of no legal import. *State v. Aguilar,* 139 Or App 175, 180 n 2, 912 P2d 379, *rev den* 323 Or 265 (1996). Occasions on which this court has chosen to disregard *dictum* in Supreme Court decisions have generally been limited to circumstances in which we conclude that a statement is clearly incorrect. *See, e.g., Norden v. Water Resources Dept.,* 158 Or App 127, 134, 973 P2d 910, *rev allowed* 328 Or 594 (1999); *Turczynski v. Grill,* 134 Or App 351, 355 n 5, 895 P2d 787 (1995). In this case, despite the dissent's carefully reasoned reliance on federal authority, we

cannot say that the Supreme Court's statement in *Jordan* is clearly incorrect under the Oregon Constitution. Although the Supreme Court may or may not decide to retreat from its statements in *Jordan* and *Davis*, it is not our place to do so.

■        In this case, the state claims no authority for entry other than reasonable suspicion to believe that Getzelman was inside the residence. Because defendant, a co-resident of the premises, objected to police entry—that entry was forbidden under such circumstances. The evidence against defendant, namely, the presence of her son, would not have been discovered had the officers not violated section 9, and it was thus properly suppressed. *State ex rel Juv. Dept. v. Rogers*, 314 Or 114, 119, 836 P2d 127 (1992). Because the Oregon Constitution requires that we affirm the trial court's decision, we do not reach defendant's alternative arguments for suppression.

Affirmed.

**LINDER, J.,** dissenting.

The majority holds that police may enter a suspect's home with an arrest warrant only if they have probable cause to believe that the person named in the warrant is present on the premises at the time. The majority arrives at that conclusion, not because it views that result to be required by Article I, section 9, of the Oregon Constitution, but because, in the majority's view, prior Oregon Supreme Court cases already have so held. I disagree. The precise level of suspicion that police must possess in this circumstance—*i.e.*, probable cause versus reasonable suspicion—is, in my view, an open question. I would resolve that issue by holding that reasonable suspicion is enough.

Contrary to the majority's understanding, neither *State v. Jordan*, 288 Or 391, 605 P2d 646, *cert den* 449 US 846 (1980), nor *State v. Davis*, 313 Or 246, 834 P2d 1008 (1992), is controlling. In *Jordan*, the police had a valid arrest warrant for Sandra Jordan, the defendant's sister, and went to the defendant's residence to execute the warrant based on information that Sandra Jordan was staying there. 288 Or at 393. The officers entered the residence without exigent circumstances, without consent, and without a search warrant. The

defendant was charged with hindering prosecution and moved to suppress evidence that Sandra Jordan was found in the home. *Id.* at 393-94. The Supreme Court identified the question before it as "whether a police officer may enter a private dwelling to execute an arrest warrant without obtaining a search warrant," *id.* at 393, and held that a search warrant is not constitutionally required. *Id.* at 401-02.

The court cast its holding in terms that, I agree, at least can be understood to require that police have probable cause:

> "We believe that constitutional rights will be protected as long as any arrest on private premises is supported by the judicial authorization of an arrest warrant and the police officer's *probable cause* to believe that the arrestee is within the premises." *Id.* (emphasis added).

But a secondary dispute in *Jordan* was whether the officers had probable cause to believe that Sandra Jordan would be found in the residence; the court concluded they did. *Id.* at 402-03. The reference to "probable cause" in the court's holding, therefore, also can be understood as only reflecting the factual record that was before the court, and I believe it should be. The fact is that the court did not have to decide—and nothing in its opinion suggests that it viewed itself as deciding—whether some lesser quantum of suspicion was constitutionally sufficient. The same is true of the court's later decision in *Davis*.[1] In short, given the specific record before the court in *Jordan*, and the court's narrow framing of the issue before it, *Jordan* should not be understood to have resolved the question presented in this case.

My primary disagreement with the majority is that it views the issue as foreclosed from examination and resolution when it is not. I do not know how the majority would resolve the legal issue if it considered itself free to do so, so I do not know if I disagree with the majority on that score. But

---

[1] In *Davis*, the court merely reaffirmed its prior holding in *Jordan* for purposes of an independent analysis under Article I, section 9. As was true in *Jordan*, the court in *Davis* held that the officers entered the suspect's home with probable cause to believe he was there. 313 Or at 255-56. Thus, as in *Jordan*, the court in *Davis* neither needed to decide, nor said it was deciding, the minimum level of suspicion needed for a lawful entry into a suspect's home to execute an arrest warrant.

I do believe that the answer the majority gives is wrong, and I will briefly explain why.

*Jordan,* although it does not squarely resolve the question, provides valuable guidance and suggests that the minimum standard should be reasonable suspicion. The court in *Jordan* identified the then-prevailing rule to be that "a police officer may enter private premises to execute a valid arrest warrant as long as the officer *reasonably believes* that the subject of the arrest warrant is on the premises." *Id.* at 397 (emphasis added). The court's discussion, considered in full, suggests that the court viewed itself as adopting that rule. *Id.* at 397-402. In fact, directly in support of its holding—and notwithstanding the "probable cause" language in that holding—*Jordan* cited three cases from other jurisdictions, all of which held that entry into a suspect's home to execute an arrest warrant is constitutional if made with a "reasonable belief" that the suspect will be found on the premises.[2] Quoting from one of those three cases, *Jordan* specifically endorsed this statement in a footnote:

> "An arrest warrant is validly issued only when a magistrate is convinced that there is probable cause to believe that the named party has committed an offense. This determination, together with the inherent mobility of the suspect, would justify a search for the suspect provided the authorities *reasonably believe* he could be found on the premises searched." *Id.* at 401 n 8 (emphasis added; quoting *United States v. McKinney,* 379 F2d 259, 263 (6th Cir 1967)).

Thus, an examination of Jordan's case-specific holding in combination with the analysis that led to that holding suggests that reasonable suspicion should suffice for the entry here. I believe that is the correct rule under Article I, section 9. In deciding the requirements of the Fourth Amendment to the United States Constitution, federal courts appear uniform in holding that reasonable suspicion, rather

---

[2] *United States v. Cravero,* 545 F2d 406, *on pet for reh'g* 545 F2d 420, 421 (5th Cir 1976), *cert den* 430 US 983 (1977); *United States v. Brown,* 467 F2d 419, 423 (DC Cir 1972); *United States v. McKinney,* 379 F2d 259, 262-63 (6th Cir 1967).

The court in *Jordan* also discussed, with seeming approval, the approach of the ALI Model Penal Code of Pre-Arraignment Procedures, which similarly permits entry into a suspect's home to execute a valid arrest warrant upon "reasonable cause" to believe that the suspect will be found there. *Jordan,* 288 Or at 398-99 n 6.

than probable cause, justifies entry into a suspect's home to execute an arrest warrant. *See, e.g., United States v. Route,* 104 F3d 59, 62 (5th Cir), *cert den* 521 US 1109 (1997) (canvassing federal circuit decisions).[3] They have so held for essentially the same reasons that the court in *Jordan* held, and later reaffirmed in *Davis,* that a search warrant is not necessary—*i.e.,* that a valid arrest warrant provides judicial protection against indiscriminate and unjustified police conduct and carries with it implicit but limited authority to at least enter a person's home where there is "reason to believe" that the suspect is within. *Compare Route,* 104 F3d at 62 *with Jordan,* 288 Or at 397-402.

That rule is persuasive and sound, and I would follow it for purposes of analyzing Article I, section 9.[4] I therefore would reverse the trial court's suppression order and remand for trial.

I respectfully dissent.

---

[3] *Route* identifies the Ninth Circuit as the only circuit that requires probable cause in this circumstance. *Route,* however, was wrong in that observation. The Ninth Circuit also holds that reasonable suspicion to believe that the person is on the premises suffices to permit entry to execute a search warrant. *United States v. Litteral,* 910 F2d 547, 554 (9th Cir 1990); *United States v. Ramirez,* 770 F2d 1458, 1460 (9th Cir 1985). Significantly, defendant does not cite any authority to the contrary, nor does he provide any analysis of why a probable cause standard better serves the values to be protected under Article I, section 9. Rather, defendant's only argument is that *Jordan* and *Davis* resolve the question in his favor.

[4] In relying on federal cases decided under the Fourth Amendment, I do not suggest that Oregon should follow those decisions just because they are federal. *See, e.g., State v. Caraher,* 293 Or 741, 748, 653 P2d 942 (1982) (the court "has independent responsibility to interpret [A]rticle I, section 9"). But neither should Oregon disavow a rule adopted by federal courts just because the federal courts arrived at it first. If federal decisions are sound and appropriately reflect the values served by our own constitutional provisions—and here those decisions do—then the rule is appropriate for us to adopt as well.